IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HOMELAND INSURANCE COMPANY OF
NEW YORK,

        Plaintiff,

v.

AAM, INC.; CENTIMARK CORPORATION;
and DEL MONTE FOODS, INC.,

        Defendants.

3:15-cv-01745-PK

OPINION & ORDER

PAPAK, Magistrate Judge:

    Plaintiff Homeland Insurance Company of New York ("Homeland") brings this insurance coverage action against AAM, Inc. ("AAM"), CentiMark Corporation ("CentiMark"), and Del Monte Foods, Inc. ("Del Monte").[1] Homeland seeks a declaratory judgment that it does not have a duty to defend or indemnify CentiMark or Del Monte against a Washington state personal injury lawsuit filed by a former AAM employee. The court has jurisdiction on the basis of diversity of citizenship. *See* 28 U.S.C. § 1332. Now before the court are the parties' Cross-Motions for Summary Judgment. For the reasons provided below, Homeland's Motion for Summary Judgment (#38) is granted in part and denied in part, and Defendants' Motion for Summary Judgment (#45) is granted in part and denied in part.

---

[1] AAM it not a party to Defendants' Motion for Summary Judgment. AAM is named as a defendant in this case only because it was the primary entity to which Homeland issued the applicable insurance policy. *See* Plf.'s Mot. for Summ. J. 2 n.1 (#38). Consequently, I refer to CentiMark and Del Monte, collectively, as "Defendants."

OPINION & ORDER —PAGE 1

# BACKGROUND[2]

## I. The Insurance Policy

At all relevant times, AAM was an Oregon corporation that performed asbestos maintenance and removal. Homeland issued an insurance policy to AAM that included commercial general liability coverage (the "Policy"). Lindley Decl. Ex. A (#39). The Policy period ran from April 1, 2013 to April 1, 2014. *Id.* Ex. A, at 8. The Policy provided, in pertinent part: "We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking those damages." *Id.* Ex. A, at 12.

Importantly, the Policy contained two endorsements that extended coverage to additional insureds. The first endorsement ("Form 1") provided as follows:

This endorsement only modifies coverage provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> CONTRACTORS ENVIRONMENTAL LIABILITY COVERAGE PART
>
> SCHEDULE

| Name of Person or Organization: |
| --- |
| Any person or organization for which the Named Insured has agreed to provide insurance prior to loss as provided by this policy but only to the scope of insurance agreed to by the Named Insured. |

. . .

A. SECTION II — WHO IS AN INSURED is amended to include as an insured the person or organization shown in the SCHEDULE above, but only with respect to liability arising out of your ongoing operations performed for that insured.

*Id.* Ex. A, at 54. The second endorsement ("Form B") provided as follows:

This endorsement only modifies coverage provided under the following:

---

[2] Except where expressly indicated otherwise, I construe the evidentiary record according to the legal standard governing motions for summary judgment under Federal Civil Procedure Rule 56.

OPINION & ORDER —PAGE 2

COMMERCIAL GENERAL LIABILITY COVERAGE PART
CONTRACTORS ENVIRONMENTAL LIABILITY COVERAGE PART

SCHEDULE

> Name of Person or Organization:
> Any person or organization for which the Named Insured has agreed to provide insurance prior to loss as provided by this policy but only to the scope of insurance agreed to by the Named Insured.

. . .

SECTION II — WHO IS AN INSURED is amended to include as an insured the person or organization shown in the SCHEDULE above, but only with respect to liability arising out of your work for that insured by or for you.

*Id.* Ex. A, at 55.

## II. The Subcontract

Del Monte hired CentiMark to perform repairs on Del Monte's warehouse in Yakima, Washington. *Id.* Ex. B, at ¶ 3.2. CentiMark subcontracted part of the project to AAM. *Id.* Ex. B, at ¶ 3.1, Ex. C. Part H of the subcontract required AAM to add CentiMark and Del Monte to the Policy as additional insureds, providing in pertinent part:

> Using an insurance company satisfactory to Contractor and in minimum dollar amounts acceptable to Contractor, the Subcontractor shall provide . . . General Liability (including Products/Completed Operations Coverage), Umbrella Liability, and Automobile Liability Insurance covering the Owner, Contractor, and any of their respective employees and agents (the Additional Insureds). The obligation of the Subcontractor is to provide such adequate insurance to protect the Subcontractor and the Additional Insureds from all risks and/or occurrences that may arise or result, directly or indirectly, from the Subcontractor's work or presence on the jobsite and all risks of injury to Subcontractor's employees . . . . This obligation shall not be avoided by allegations of contributory or sole acts, failure to act, omissions, negligence or fault of the Additional Insureds.

*Id.* Ex. C, at 2.[3]  Pursuant to the subcontract, AAM obtained a certificate of insurance confirming that CentiMark and Del Monte were named as additional insureds under the Form 1 and Form B endorsements. *Id.* Ex. D, at 9, 11-12.

## III. The Workplace Injury

Juan Orta-Carrizales was an AAM employee assigned to work on the Del Monte warehouse project. *Id.* Ex. B, at ¶ 3.1. While working on the project on November 25, 2013, Orta-Carrizales fell through the warehouse roof and landed on the ground approximately forty feet below, suffering severe injuries as a result. *Id.* Ex. B, at ¶¶ 3.1-3.7. Orta-Carrizales then filed a personal injury suit against CentiMark and Del Monte in Yakima County Superior Court on April 27, 2015, alleging those defendants were negligent in relation to the accident (the "underlying suit"). *Id.* Ex. B. The underlying suit is still pending, and Orta-Carrizales has not named AAM as a defendant. Rather, he filed a workers' compensation claim with AAM's workers' compensation insurer, Liberty Northwest. Johnston Decl. Ex. A (#49-1). AAM subsequently dissolved. Lindley Decl. ¶ 3 (#39).

CentiMark and Del Monte tendered the underlying suit to Homeland, asserting they were entitled to a defense as additional insureds. *Id.* at ¶ 6. Homeland agreed to defend CentiMark and Del Monte, subject to a full reservation of rights, including the "right to pursue a declaratory judgment action to resolve coverage disputes." *See id.* Ex. E – Ex. F (#39). Then, on September 15, 2015, Homeland initiated the present suit, seeking a declaratory judgment that it does not have a duty to defend or indemnify CentiMark or Del Monte against the underlying suit.

---

[3] The subcontract further defines Del Monte as the "Owner," CentiMark as the "Contractor," and AAM as the "Subcontractor." *Id.* Ex. C, at 1.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The substantive law governing a claim or defense determines which facts are material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). In adjudicating a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party and may neither make credibility determinations nor weigh evidence. *See, e.g., Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990). On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the other. *See* Fed. R. Civ. P. 56; *see also, e.g., Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

## DISCUSSION

The parties' Cross-Motions for Summary Judgment present two primary issues: (1) whether Homeland has a duty to defend CentiMark and Del Monte against the underlying suit and (2) whether Homeland has a duty to indemnify CentiMark and Del Monte against the underlying suit. I address each issue separately. I then address whether Homeland is entitled to summary judgment on CentiMark's counterclaim for attorney fees.

## I. Duty to Defend

Defendants are granted summary judgment on Homeland's duty to defend. An insurer has a duty to defend a suit against its insured when the injured claimant could recover under the allegations in the complaint "upon any basis for which the insurer affords coverage." *W. Hills Dev. Co. v. Chartis Claims, Inc.*, 359 P.3d 339, 343 (Or. App. 2015) (citing *Casey v. Nw. Sec. Ins. Co.*, 491 P.2d 208, 210 (Or. 1971)); *accord Ledford v. Gutoski*, 877 P.2d 80, 82 (Or. 1994) (citations omitted). The court examines "just two documents to determine whether an insurer has a duty to defend an action against its insured: the insurance policy and the complaint in the action against the insured." *W. Hills Dev. Co.*, 359 P.3d at 343 (citing *Oakridge Comm. Ambulance v. U.S. Fidelity*, 563 P.2d 164, 166 (Or. 1977)). "Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured." *Ledford*, 877 P.2d at 83 (citation omitted).

Both CentiMark and Del Monte are entitled to defense coverage under the express terms of the Policy. The Policy affords defense coverage for liability arising out of AAM's work for entitles identified as additional insureds in the Form 1 and Form B endorsements. *See* Lindley Decl. Ex. A, at 54-55 (#39). As stated above, both CentiMark and Del Monte are identified as additional insureds in the Form 1 and Form B endorsements. *See id.* Ex. A, at 54-55, Ex. C, at 2, Ex. D, at 9, 11-12. Orta-Carrizales alleges in the underlying complaint that, at the time of the accident, he was working for AAM on a roofing project for CentiMark on Del Monte's property. *Id.* Ex. B, at ¶¶ 3.1-3.2. Therefore, AAM was clearly performing work for additional insureds. Moreover, because the liability alleged in the underling suit is directly related to AAM's roofing

work for CentiMark and Del Monte, it clearly arises out of that work.[4] Homeland therefore has a duty to defend CentiMark and Del Monte against the underlying suit under the express terms of the Policy.

However, Homeland argues that the subcontract is voided by Oregon's anti-indemnity statute.[5] Because the Policy's additional insured endorsements would not have been triggered in the absence of the subcontract, there is no duty to defend if the subcontract is void. *See* Lindley Decl. Ex. A, at 54-55 (#39) (additional insured endorsements triggered by AAM's *agreement* to insure third parties).

As an initial matter, I must resolve a choice of law issue. While Homeland argues that Oregon's anti-indemnity statute applies to the subcontract, Defendants argue that Washington supplies the applicable anti-indemnity statute. Because the court is sitting in diversity, I must apply Oregon's choice of law rules. *See Klaxton Co. v. Stentor Co.*, 313 U.S. 487, 496 (1941); *Coneff v. AT & T Corp.*, 673 F.3d 1155, 1161 (9th Cir.2012). I assume, without deciding, that the Oregon and Washington anti-indemnity statutes are materially different. *See Waller v. Auto–*

---

[4] The parties do not appear to argue that the terms "arising out of," "work," or "for" are ambiguous, and in any event, I find that they are not. I therefore reach my conclusion under the plain meanings of those terms. *See Mortgage Bancorporation v. New Hampshire Ins. Co.*, 677 P.2d 726, 728 (Or. App. 1984) ("When words of common understanding are used and the meaning is clear and subject to only a single reasonable meaning, no interpretation is necessary, and the words are to be taken in their plain, ordinary and popular sense."); *see also Mort v. United of Omaha Life Ins. Co.*, 734 F. Supp. 2d 1118, 1120 (D. Or. 2010) ("This court uses Oregon law when interpreting an insurance contract because it has jurisdiction based solely on the diversity of the parties." (citation omitted)), *aff'd*, 444 F. App'x 208 (9th Cir. 2011). I note, however, that the same conclusion would follow if I found that the terms were ambiguous. *See Shadbolt v. Farmers Ins. Exch.*, 551 P.2d 478, 480 (Or. 1976) ("[W]e have said many times that if there is an ambiguity in the terms of an insurance policy, any reasonable doubt as to the intended meaning of such terms will be resolved against the insurance company and in favor of extending coverage to the insured." (citations omitted)).

[5] Homeland's Complaint identifies and relies on the subcontract. *See* Compl. ¶¶ 11, 13, 19 (#1). The subcontract is therefore incorporated by reference into the Complaint. *See, e.g., Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir.1999).

OPINION & ORDER —PAGE 7

*Owners Ins. Co.*, 26 P.3d 845 (Or. App. 2001) (holding that, under Oregon choice-of-law rules, the court must determine as a threshold issue whether there is a material difference between Oregon law and the law of the other forum).

The subcontract expressly incorporates AAM's project bid. *See* Lindley Decl. Ex. C, at 1 ¶ A (#39). The project bid contains the following choice of law provision: "This agreement shall be construed in accordance with, and governed by, the laws of Oregon." *Id.* Ex. C, at 5. Thus, the subcontract provides for the application of Oregon law.

Defendants argue that the choice of law provision is unenforceable because (1) it was not expressly incorporated into the subcontract, (2) Oregon does not have a strong interest in applying its anti-indemnity statute to the subcontract, and (3) Oregon choice of law rules for construction litigation reflect a preference for the law of the place of performance. I am unpersuaded.

Defendants' first argument fails because, as explained above, the choice of law provision is expressly incorporated into the subcontract. *See Id.* Ex. C, at 1 ¶ A. Defendants' second and third arguments are likewise unavailing. It appears that Defendants mistakenly premise those arguments on Oregon's common law choice of law rules. *See Capital One Bank v. Fort*, 255 P.3d 508, 510-11 & n.3 (Or. App. 2011) (discussing Oregon's common law choice of law rules, which focus on the relationship between the litigation and the law of the chosen state (citing Restatement (Second) of Conflict of Laws § 187(2) (1971))); *Herron v. Wells Fargo Fin., Inc.*, No. 05-CV-659-ST, 2006 WL 2422831, at *10 (D. Or. May 22, 2006) (holding that Oregon's statutory choice of law rules were intended to replace its common law choice of law rules regarding contract issues). However, since neither of the parties to the subcontract is a financial institution, as defined in 15 U.S.C. § 6827, Oregon's statutory choice of law rules govern. *See*

OPINION & ORDER —PAGE 8

Or. Rev. Stat. § 15.305; *CACV of Colorado, LLC v. Stevens*, 274 P.3d 859, 863 n.6 (Or. App. 2012). Under the statutory framework, an express, conspicuous choice of law provision is enforceable unless the chosen law would:

(a) Require a party to perform an act prohibited by the law of the state where the act is to be performed under the contract;

(b) Prohibit a party from performing an act required by the law of the state where it is to be performed under the contract; or

(c) Contravene an established fundamental policy embodied in the law that would otherwise govern the issue in dispute under ORS 15.360.

Or. Rev. Stat. § 15.350, .355(1).

In this case, the parties' choice of law provision is express and conspicuous. *See* Lindley Decl. Ex. C, at 1 ¶ A (#39). Defendants' second and third arguments do not fit within any of the above-quoted statutory exceptions to the enforceability of a choice of law provision. Defendants do not offer any other argument for why one or more of those exceptions apply, and in any event, I find that they do not.[6] Consequently, Oregon's anti-indemnity statute applies to the subcontract.[7]

---

[6] Although section 15.355 does not list the chosen state's interest in the litigation as a relevant factor in determining whether to enforce a contractual choice of law provision, I note that Oregon has an interest in applying its anti-indemnity statute to the parties' subcontract. The statute was enacted to protect Oregon subcontractors and their insurers from having to insure against general contractors' negligence in order to obtain subcontracted work. *See Montara Owners Ass'n v. La Noue Dev., LLC*, 353 P.3d 563, 569 (Or. 2015). AAM was an Oregon subcontractor. *See* Lindley Decl. Ex. A, at 3 (#39) (insurance policy listing an Oregon address for AAM). Oregon therefore has an interest in applying its anti-indemnity statute to the subcontract. Thus, whether I apply Oregon's common law or statutory choice of law rules, I reach the same conclusion: Oregon's anti-indemnity statute applies to the subcontract.

[7] The parties do not appear to dispute that the Policy itself is also governed by Oregon law. To be sure though, because the Policy was issued to an Oregon insured, *see id.*, and the additional insured certificate was issued by an Oregon broker, *see id.* Ex. D, at 9, the Policy is governed by Oregon law. *See* Findings and Recommendation at 14-15, *Tudor Ins. Co. v. Howard S. Wright Const. Co.* (D. Or., Dec. 23, 2004), No. CIV. 04-480-ST (#34) (applying Oregon law to an insurance policy where the policy was issued to an Oregon entity and the additional insured

Oregon's anti-indemnity statute prohibits construction agreements from requiring a subcontractor or a subcontractor's insurer to indemnify or defend another party against liability caused by the other party's own negligence. *See* Or. Rev. Stat. § 30.140. The statute provides, in pertinent part:

> (1) Except to the extent provided under subsection (2) of this section, any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused in whole or in part by the negligence of the indemnitee is void.
>
> (2) This section does not affect any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property to the extent that the death or bodily injury to persons or damage to property arises out of the fault of the indemnitor, or the fault of the indemnitor's agents, representatives or subcontractors.
>
> (3) As used in this section, "construction agreement" means any written agreement for the planning, design, construction, alteration, repair, improvement or maintenance of any building, highway, road excavation or other structure, project, development or improvement attached to real estate including moving, demolition or tunneling in connection therewith.

*Id.* § 30.140(1)-(3). Section 30.140 applies to both indemnity and defense agreements. *See Sunset Presbyterian Church v. Andersen Const. Co.*, 341 P.3d 192, 199-200 (Or. App. 2014). The statute also applies to additional insured endorsements, like those at issue in this case, that are obtained via indemnity and defense agreements. *Walsh Const. Co. v. Mut. of Enumclaw*, 104 P.3d 1146, 1147 (Or. 2005).

In this case, the subcontract is clearly a construction agreement. *See* Lindley Decl. Ex. C (#39). Moreover, as stated above, the subcontract required AAM to obtain insurance coverage that would protect CentiMark and Del Monte from "all risks of injury" to AAM employees,

---

certificate was issued by an Oregon broker, notwithstanding the fact that the underlying workplace accident took place in Washington).

regardless of any "negligence or fault" on the part of CentiMark or Del Monte. *Id.* Ex. C, at 2. As further explained above, AAM's assent to the subcontract triggered the additional insured endorsements contained in Form 1 and Form B. *See id.* Ex. A, at 54-55. The subcontract and resulting endorsements therefore run afoul of section 30.140.

However, neither the subcontract nor the additional insured endorsements are completely voided by the statute. As this court recently explained:

> In *Montara Owners Ass'n,* the Oregon Supreme Court held . . . that an indemnification provision subject to O.R.S. 30.140 is not completely void when it requires the indemnitor (usually a subcontractor) to indemnify another (the indemnitee, usually a general contractor) for damages that arise in whole or in part by the negligence of the indemnitee if the provision also allows indemnification for damages that arise in whole or in part out of the negligence of the indemnitor. 353 P.3d at 567–70, 2015 WL 3791636, at **3–6. To the extent the provision requires indemnification for the negligence of the indemnitee, it is void under O.R.S. 30.140(1). *Id.* at 567–68, 2015 WL 3791636 at *3. But, because the court read subsection (2) as an exception to subsection (1), it held that the indemnity provision remained enforceable to the extent allowed by subsection (2), meaning to the extent it required indemnification for the negligence of the indemnitor. *Id.* at 568–70, 2015 WL 3791636 at **4–6. Such provisions are "partially enforceable." *Id.* at 568, 2015 WL 3791636 at *3.

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.,* 112 F. Supp. 3d 1160, 1165 (D. Or. 2015). The *Montara* court's "partially enforceable" rule applies to defense agreements as well as indemnity agreements. *Id.* at 1165-67. Thus, section 30.140 does not permit Homeland to completely disclaim its duty to defend CentiMark or Del Monte. *See id.* Rather, the subcontract and additional insured endorsements are enforceable to the extent they require Homeland to defend CentiMark and Del Monte against damages caused by AAM's negligence. *See id.*

Homeland argues that even under *Montara,* it does not have any duty to defend CentiMark or Del Monte against the underlying suit because Orta-Carrizales does not allege AAM's negligence. That argument is based on the fact that the underlying complaint names only CentiMark and Del Monte as defendants; it does not assert claims against AAM.

OPINION & ORDER — PAGE 11

This court has previously rejected Homeland's argument. *See, e.g., id* at 1167; *Hoffman Const. Co. of Oregon v. Travelers Indem. Ins. Co.*, No. CIV. 05-456-AA, 2005 WL 3689487, at *4 (D. Or. Nov. 28, 2005). Those decisions recognize that an injured employee's failure to name his employer in an underlying personal injury action is attributable to the exclusivity of Oregon's workers' compensation law.[8] *See Portland Gen. Elec.*, 112 F. Supp. 3d at 1166; *Clarendon Nat. Ins. Co. v. Am. States Ins. Co.*, 688 F. Supp. 2d 1186, 1192 (D. Or. 2010); *Richardson v. Howard S. Wright Const. Co.*, No. CV-05-1419-ST, 2007 WL 1467411, at *6 (D. Or. May 18, 2007). Consequently, when an injured employee fails to allege his employer's negligence, "the inquiry focuses on whether fault is implied." *Portland Gen. Elec.*, 112 F. Supp. 3d at 1166 (citing *Arch Ins. Group, Inc. v. Travelers Prop. Cas. Co.*, No. 03:10-cv-00801-HZ, 2011 WL 6778757, at *3 (D. Or. Dec. 23, 2011)); *accord Hoffman Const. Co. of Oregon*, 2005 WL 3689487, at *4. The duty to defend is triggered when the underlying complaint is ambiguous and implies negligence by the employer. *See Portland Gen. Elec.*, 112 F. Supp. 3d at 1166; *see also Ledford*, 877 P.2d at 83 ("Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured." (citation omitted)).

In *Portland General Electric*, Joel Belgarde was injured while performing construction work for his employer, NAES, at a plant owned by Portland General Electric ("PGE"). 112 F. Supp. 3d at 1162. Belgarde filed a personal injury lawsuit against PGE, but he did not name NAES in the action. *Id.* at 1165-66. NAES had added PGE as an additional insured on its insurance policy, which was issued by Liberty, pursuant to a contract between NAES and PGE. *Id.* at 1162. PGE sought a declaratory judgment that Liberty had a duty to defend and indemnify it against the underlying suit. *Id.* Liberty raised the same argument that Homeland raises here—

---

[8] As stated above, Orta filed a workers' compensation claim with AAM's workers' compensation insurer. Johnston Decl. Ex. A (#49-1).

because the injured employee did not allege his employer's negligence in the underlying suit, there was no duty to defend under ORS section 30.140. *Id.* at 1165-66.

The *Portland General Electric* court rejected that argument and granted summary judgment in PGE's favor on the duty to defend claim. *Id.* at 1167. In doing so, the court analyzed whether the underlying suit implied NAES's fault. *Id.* at 1165-67. Belgarde alleged in the underlying complaint that PGE controlled, directed and monitored his work at the PGE plant. *Id.* at 1162. He further alleged that he "was instructed to move the air cannon from station to station to propel heating elements in to [sic] place." *Id.* at 1166 (citation omitted) (internal quotation marks omitted). According to Belgarde, PGE failed to properly install the safety catch on the air cannon's main valve. *Id.* As Belgarde was moving the air cannon, the main valve lever allegedly caught a loop in his overalls, activating the cannon's air supply. *Id.* Belgarde's co-worker then allegedly closed the safety valve, which caused the cannon to shoot backwards and injure Belgarde. *Id.*

The court held that although the underlying complaint alleged that PGE was responsible for the improperly installed safety catch mechanism, it also implied NAES's fault to the extent it alleged that Belgarde was instructed to move the air cannon. *See id.* at 1166-67. The complaint did not allege who instructed Belgarde to move the air cannon. *Id.* at 1166. However, "[b]ecause NAES had a contract to perform maintenance at [PGE's] plant and Belgarde was employed by NAES, it [was] reasonable to infer that someone at NAES provided the instruction to move the air cannon, even though Belgarde allege[d] that [PGE] controlled and directed his work." *Id.* at 1167. Because the underlying complaint implicitly alleged NAES's fault, Liberty had a duty to defend PGE. *Id.*

Similarly, the underlying complaint in this case implicitly alleges the fault of AAM. Orta-Carrizales alleges that he was instructed to remove roofing materials and carry them across the roof of Del Monte's warehouse. Lindley Decl. Ex. B, at ¶ 3.6 (#39). He further alleges that he was instructed to walk along the roof joists only, so as to avoid falling through the corroded roof. *Id.* Ex. B, at ¶¶ 3.5-3.6. According to Orta-Carrizales, the joists were not marked, and he fell through the roof while carrying the removed materials. *Id.* Ex. B, at ¶¶ 3.5, 3.7, 4.6. Because he was carrying the materials as instructed, Orta-Carrizales was allegedly unable to properly shorten the length of the grab rope on his safety harness as he moved to lower areas of the roof. *Id.* Ex. B, at ¶ 3.6. Consequently, when Orta-Carrizales fell, the rope was too long to catch him before he hit the ground. *Id.* Ex. B, at ¶ 3.7.

As in *Portland General Electric*, it is reasonable to infer that AAM provided the instructions that lead to Orta-Carrizales's injury. Although Orta-Carrizales does not affirmatively allege who instructed him how to remove the roofing materials, he does allege that he was "acting within the course and scope of his employment" for AAM when he was injured. *Id.* Ex. B, at ¶ 3.1. Therefore, it is reasonable to infer that AAM instructed Orta-Carrizales how to remove the roofing materials. *See Portland Gen. Elec.*, 112 F. Supp. 3d at 1167. Because Orta-Carrizales also alleges that neither CentiMark nor Del Monte warned him of the dangers of working on the corroded roof, Lindley Decl. Ex. B, at ¶¶ 3.5, 3.8, 4.5 (#39), it is also reasonable to infer that AAM provided the deficient safety instruction about walking along the unmarked joists. *See Portland Gen. Elec.*, 112 F. Supp. 3d at 1167; *see also Hoffman Const. Co. of Oregon*, 2005 WL 3689487, at *4 (holding that the underlying complaint was ambiguous and therefore triggered a duty to defend where it did not expressly allege who was responsible for a flight of temporary steps on which the underlying plaintiff was injured, and consequently, the

allegations implicated nonparties, including the insured (citing *Tudor Ins. Co. v. Howard S. Wright Const. Co.*, No. CIV. 04-480-ST, 2005 WL 425464, at *2 (D. Or. Feb. 18, 2005), *amended*, No. CV-04-480-ST, 2005 WL 783060)). Homeland therefore has a duty to defend CentiMark and Del Monte against the underlying suit.

As a final matter, I reject Homeland's argument that it is entitled to summary judgment based on the holding in *Sunset Presbyterian Church v. Andersen Construction*, 341 P.3d 192 (Or. App. 2014). That case involved a breach of contract action for failure to defend. *Id.* at 194. The court found that the plaintiff was not entitled to damages because it failed to separately identify the expenses it incurred in defending against claims that "might implicate" the indemnitor's negligence from the expenses it incurred in defending against claims that "indisputably did not arise out of [the indemnitor's] negligence because they involved allegedly defective work outside the scope of [the indemnitor's] subcontract." *Id.* at 194-95, 197.

Unlike *Sunset Presbyterian Church*, this case involves a claim for declaratory judgment, not a claim for breach of contract. Therefore, CentiMark and Del Monte need not establish damages.[9] Moreover, I have already determined that the personal injury claims alleged by Orta-Carrizales in the underlying suit "might implicate" AAM's negligence. This is not a case where some of the alleged injury in the underlying action was "indisputably" caused by someone other than the indemnitor. Thus, Homeland has a duty to defend CentiMark and Del Monte against the entire underlying suit. *See id.* 197; *accord Portland Gen. Elec.*, 112 F. Supp. 3d at 1166-67.

In sum, construing the ambiguities in the underlying complaint against Homeland, there are implicit allegations of AAM's fault underlying all of Orta-Carrizales's claims, and as a result,

---

[9] Homeland's argument to the contrary is particularly untenable in light of the fact that it is the plaintiff in this case.

OPINION & ORDER —PAGE 15

Homeland has a duty to defend CentiMark and Del Monte against the underlying suit. Therefore, Defendants are granted summary judgment on Homeland's duty to defend.

## II.  Duty to Indemnify

Neither party is granted summary judgment on Homeland's duty to indemnify. "The duty to indemnify is separate from the duty to defend." *Portland Gen. Elec.*, 112 F. Supp. 3d at 1167; *accord Ledford*, 877 P.2d at 84 (citation omitted). The breach of one duty "does not, in and of itself, establish the breach of the other." *Nw. Pump & Equip. Co. v. Am. States Ins. Co.*, 925 P.2d 1241, 1243 (Or. App. 1996) (citation omitted). "Thus, although the duty to defend is triggered by the bare allegations of the complaint, the duty to indemnify 'is established by proof of actual facts demonstrating a right to recover.'" *Clarendon Nat. Ins.*, 688 F. Supp. 2d at 1192-93 (quoting *Nw. Pump & Equip.*, 925 P.2d at 1243).

As stated above, under ORS section 30.140, CentiMark and Del Monte are entitled to indemnification for only liability that did not result from their own negligence. AAM's negligence would be the most likely source of such liability.[10] However, the issue of AAM's potential liability for Orta-Carrizales's injury is fact-bound and not properly framed by the present motions. Indeed, the underlying suit is still pending. At this point in the proceedings, even assuming that the evidence establishes that AAM bears some fault for Orta-Carrizales's injury, it remains uncertain whether CentiMark or Del Monte also bear some fault. I therefore defer on the issue of indemnity.[11] *See Portland Gen. Elec.*, 112 F. Supp. 3d at 1168 ("[I]t is premature at this summary judgment stage to make the final determination on indemnity.");

---

[10] Because the issue is not presently before the court, I do not decide whether section 30.140 voids contractual provisions that require a subcontractor to defend against claims caused by the negligence of third parties, such as other subcontractors. *See also Sunset Presbyterian Church*, 341 P.3d at 198 (declining to address that issue).

[11] At oral argument, Homeland conceded that its Motion for Summary Judgment on the duty to indemnify is premature. *See* Plf.'s Reply 3, 11-12 (#52).

OPINION & ORDER —PAGE 16

*Clarendon Nat. Ins.*, 688 F. Supp. 2d at 1192-93 (same); *Richardson*, 2007 WL 1467411, at *9 (same).

### III. CentiMark's Counterclaim for Attorney Fees

Homeland is granted summary judgment on CentiMark's counterclaim for attorney fees. CentiMark asserts the claim under ORS section 742.061, which provides as follows:

> [I]f settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon.

It is well-settled that, under that provision, "a defendant insured is not entitled to attorney fees when he prevails in a declaratory judgment proceeding brought by his insurer to test coverage." *McGraw v. Gwinner*, 578 P.2d 1250, 1252 (Or. 1978) (internal quotation marks omitted) (quoting *Hardware Mut. Cas. Co. v. Farmers Ins. Exch.*, 474 P.2d 316, 322 (Or. 1970) (en banc)).[12] Rather, "the insured must recover a money judgment against the insurer; it is not sufficient that the insured establish coverage which may in turn lead to a subsequent recovery of money." *McGraw*, 578 P.2d at 1253. Consequently, Homeland is granted summary judgment on CentiMark's counterclaim for attorney fees.

### CONCLUSION

For the reasons provided above, the parties' Cross-Motions for Summary Judgment are granted and denied as follows:

---

[12] *McGraw* discusses an earlier version of the fees statute, which was located at section 743.114. However, the court's analysis applies with equal force to the current renumbered version of the statute located at section 742.061.

OPINION & ORDER —PAGE 17

1. Homeland's Motion for Summary Judgment (#38) is denied with respect to the duty to defend, deferred with respect to the duty to indemnify, and granted with respect to CentiMark's counterclaim for attorney fees.

2. Defendants' Motion for Summary Judgment (#45) is granted with respect to the duty to defend and denied in all other respects.

Dated this 13th day of May, 2016.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge